1332

Margie A. DOWD & James Alexander Schultz, Respondents v. IMPERIAL CHRYSLER-PLYMOUTH, INC. d/b/a Ken Hyatt Chrysler-Plymouth and Chrysler Corporation, Defendants, of whom Imperial Chrysler-Plymouth, Inc. d/b/a Ken Hyatt Chrysler-Plymouth is Appellant.

(381 S. E. (2d) 212)

Court of Appeals

*Randall M. Chastain,* Columbia, *for appellant.*

*William P. Simpson* and *Steven T. Moon, Haynesworth, Marion, McKay & Guerard,* Columbia, *for respondents.*

Heard March 17, 1989.

Decided April 24, 1989, as amended May 15, 1989.

SANDERS, Chief Judge:

This suit arises out of the sale of a car. Respondent Margie A. Dowd bought a car from appellant Imperial Chrysler-Plymouth d/b/a Ken Hyatt Chrysler-Plymouth. She and her son, respondent James Alexander Schultz, thereafter sued Imperial alleging causes of action for fraud and for violation of the South Carolina Unfair Trade Practices Act, Sections 39-5-10 to -160, Code of Laws of South Carolina, 1976. The jury returned a verdict in favor of Imperial on the cause of action for fraud and against Imperial on the cause of action for violation of the Act. We affirm.

The evidence and all reasonable inferences arising therefrom must be viewed in the light most favorable to Mrs. Dowd and her son. *Trotter v. State Farm Mut. Auto. Ins. Co.,* 297 S. C. 465, 377 S. E. (2d) 343 (Ct. App. 1988).

Imperial is a car dealer. The car was a new model with 6,954 miles showing on the odometer. The salesman, who sold the car to Mrs. Dowd, told her that it "had come in off of a fleet lease." Actually, the car was a kind of car known by the ominous-sounding acronym, "DRAC." The acronym is formed from the first letters of the compound term "Dealer Rent-A-Car." Such a car is maintained by a dealer for rental on a daily basis.[1] The salesman was trained to tell potential buyers that a car had been leased as a part of a fleet of cars even though the car might be a "DRAC."[2] Within three weeks, Mrs. Dowd began experiencing recurring problems with the car. In less than two years, seven batteries, three alternators and two voltage regulators had to be replaced. Its faulty electrical system was never corrected. Mrs. Dowd would not have bought the car had she known it was a "DRAC."

## I.

Imperial argues that "the jury's verdict is internally inconsistent." Its argument is based on the fact that, although the jury found in its favor on the cause of action for fraud, the jury found against it on the cause of action for violation of the Unfair Trade Practices Act. We cannot address this argument. It does not appear that Imperial moved for a new trial based on inconsistency of the verdict. Any question regarding the inconsistency of a verdict must be raised by a motion for a new trial. *New York Carpet World v. Houston*, 292 S. C. 101, 354 S. E. (2d) 924 (Ct. App. 1987). In any event, we would reject the argument on its merits. It is our duty to uphold a jury verdict if its various aspects can be logically reconciled. *Id.* Both this Court and our Supreme Court have held that proof of common law fraud is not required to establish a violation of the Act. *Inman v. Ken Hyatt Chrysler Plymouth, Inc.*, 294 S. C. 240, 363 S. E. (2d) 691 (1988); *State ex rel. McLeod v. C & L*

---

[1] This fact can be inferred from the testimony of a witness that the acronym means "Daily Rental Car."

[2] This fact can be inferred from the testimony of the general manager for Imperial. He was asked: "What is that salesman trained to tell people about a fleet lease car?" He replied, in part: "[T]hat salesman may not know that that one particular unit right there is a D.R.A.C. car or a fleet car that was purchased in the Chrysler sale. So, they just use the word fleet lease car."

*Corp.*, 280 S. C. 519, 313 S. E. (2d) 334 (Ct. App. 1984). To recover for fraud, the familar nine elements must be proved "by clear, cogent, and convincing evidence." *May v. Hopkinson*, 289 S. C. 549, 557, 347 S. E. (2d) 508, 512-13 (Ct. App. 1986). No such proof is required to recover under the Act. The jury could have found that Mrs. Dowd failed to prove fraud but succeeded in proving a violation of the Act. Thus, the verdict of the jury was not necessarily inconsistent.

## II.

Imperial argues that the amount of the verdict is not supported by the evidence. The verdict was for $1,500 actual damages. To bring an action under the Unfair Trade Practices Act, an individual must have suffered an "ascertainable loss." Section 39-5-140. Imperial argues that "the amount of damages shown was at most $97.00." It does not appear that Imperial moved for a new trial based on the amount of the verdict. Where no motion for a new trial or a new trial *nisi* is made before the trial judge, the question of whether the amount of the verdict is supported by the evidence is not preserved for review on appeal. *Lites v. Taylor*, 284 S. C. 316, 326 S. E. (2d) 173 (Ct. App. 1985). In any event, we would conclude that the evidence does support the verdict in the amount of $1,500.

## III.

Imperial argues that its conduct does not amount to a violation of the Unfair Trade Practices Act. The Act declares unlawful, "deceptive acts or practices in the conduct of any trade or commerce." Section 39-5-20. To be actionable, "the unfair or deceptive act or practice in the conduct of trade or commerce must have an impact upon the public interest." *Noack Enterprises, Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S. C. 475, 479, 351 S. E. (2d) 347, 350 (Ct. App. 1986). "[U]nfair or deceptive acts or practices in the conduct of trade or commerce have an impact upon the public interest if the acts or practices have the potential for repetition." *Ib.* at 480, 351 S. E. (2d) at 350-51.

The salesman for Imperial did not accurately represent the history of the car. He told Mrs. Dowd, in effect, that it

had been leased as a part of a fleet. The car, in fact, had been maintained by the dealer for daily rentals. Our Supreme Court addressed remarkably similar facts in *Inman*, 294 S. C. 240, 363 S. E. (2d) 691. There, as here, a dealer did not accurately represent the history of a car to a purchaser. The car had 3,482 miles on it at the time of the purchase, a fact which the purchaser acknowledged. The dealer represented that the car was "a new demonstrator." The dealer also represented that it "had all the bugs worked out." Thereafter, when battling with the dealer over repairs, the purchaser discovered that the car had been previously sold to another person who had returned it eight days later, after having driven it 225 miles. The Court held that the conduct of the dealer was a deceptive trade practice under the Act. More significantly, the Court held that this was true "even if the product is as good as new." *Id.* at 243, 363 S. E. (2d) at 692. Accordingly, we hold that the conduct of Imperial was a deceptive trade practice.

The potential for repetition of the practice is apparent. The salesman for Imperial was trained to tell potential buyers what he told Mrs. Dowd even though what he tells them might not be accurate. Therefore, we further hold that the deceptive trade practice has the requisite impact upon the public interest.

For these reasons, the judgment of the Circuit Court is

Affirmed.

GARDNER and CURETON, JJ., concur.

