24463

DAISY OUTDOOR ADVERTISING COMPANY, INC., Respondent/Petitioner v. Dean ABBOTT, d/b/a/ Abbott Company Outdoor Advertising, Petitioner/Respondent.

(473 S.E. (2d) 47)

Supreme Court

490

*J. Edwin McDonnell,* Spartanburg, *for Petitioner/Respondent.*

*William G. Rhoden,* of *Winter & Rhoden,* Gaffney, *for Respondent/Petitioner.*

Heard Mar. 5, 1996.

Decided July 15, 1996.

TOAL, Justice:

This case stems from an ongoing dispute between two outdoor advertisers, Daisy Outdoor Advertising Company ("Daisy") and Dean Abbott d/b/a Abbott Company Outdoor Advertising ("Abbott"). We granted certiorari to clarify our precedents concerning the public interest requirement for a private cause of action under South Carolina's Unfair Trade Practices Act ("UTPA"), S.C. Code Ann. § 39-5-20 (1985). The Court of Appeals found that although Abbott presented evidence that Daisy's practice of blocking Abbott's billboards had the potential for repetition, Abbott failed to present any evidence that Daisy's actions adversely affected the public interest. The Court of Appeals also upheld the circuit court's award of damages on another cause of action. We reverse the Court of Appeals' holding as the UTPA, but affirm as to damages.

### FACTUAL/PROCEDURAL BACKGROUND

Daisy and Abbott are fierce competitors in the business of outdoor advertising. Both companies lease billboard advertising space to customers. They operate primarily in upstate South Carolina.

The events giving rise to the present dispute occurred on two sites located in Gaffney, South Carolina on Interstate Highway 85. Daisy owned the first site ("the radio station property"). After Daisy purchased the site, it constructed a building on the property and rented part of the building to a radio station. Daisy then built one outdoor advertising billboard next to its building and another approximately six-hundred feet north of the building.

Abbott leased property immediately south of Daisy's site. After obtaining a permit from the South Carolina Department of Highways and Public Transportation ("Highway Department"), Abbott erected an outdoor advertising billboard on the property it leased. Abbott then leased to a customer, Clarkson Industrial Movers ("Clarkson"), the billboard side

viewed by drivers travelling south. Clarkson's monthly rent for the sign was $425.00. Sometime after Abbott leased its sign to Clarkson, Daisy erected on the billboard located beside its building a sign advertising the radio station. Daisy's sign blocked the Clarkson advertisement entirely and violated state law. When Daisy was informed of the illegality of its sign, it replaced the illegal sign with an unregulated "for sale" sign advertising the property on which the sign is located. Like Daisy's previous sign, the unregulated "for sale" sign completely blocked the Clarkson advertisement. Abbott was forced to find another outdoor advertising billboard for Clarkson's advertisement.

The facts concerning the second site are similar. On the second site ("the Hamrick's site"), Abbott built a two-sided outdoor advertising billboard. For several years Abbott leased to Hamrick's of Gaffney the side visible to cars heading south. Daisy wanted to share the billboard with Abbott and asked to lease the side visible to cars heading north, but Abbott refused. Shortly thereafter, Daisy, which owned land adjacent to the Hamrick's site, erected a large "for sale" sign[1] blocking Abbott's billboard and Hamrick's advertisement. Because its advertisement was no longer visible to drivers traveling on I-85, Hamrick's quit paying Abbott $550.00 per month for the use of the billboard.

In February 1990, Daisy filed a complaint against Abbott alleging interference with a lease of real property by Daisy from a third party. Abbott counterclaimed alleging, among other things, intentional interference with contract rights and unfair competition under the UTPA. Both counterclaims were based on the acts described above. After a nonjury trial, the trial judge ruled in favor of Abbott on both the intentional interference with contract and unfair trade practices claims. The judge found Abbott's actual damages were $7,675.00, representing the balance of Abbott's existing contracts with Clarkson and Hamrick's. Because he determined Daisy's actions were willful, the judge trebled Abbott's damages as permitted by UTPA.

---

[1] State law prohibited Daisy from erecting an outdoor advertising billboard on its own land because that billboard would necessarily be less than five-hundred feet from the billboard belonging to Abbott.

The Court of Appeals reversed the trial court's finding that Daisy committed unfair trade practices. *Daisy Outdoor Advertising Co. v. Abbott*, 317 S.C. 14, 451 S.E. (2d) 394 (Ct. App. 1994). It found that although Abbott had presented evidence showing a potential for repetition of Daisy's acts, Abbott had not produced evidence that Daisy's actions adversely affected the public interest. Judge Connor dissented, reasoning that evidence of the potential for repetition sufficed to show the required adverse impact on the public interest. This Court granted certiorari.

## LAW/ANALYSIS

### A. *Unfair Trade Practices/Public Interest Requirement*

Abbott argues that the Court of Appeals erred in finding there was no evidence that Daisy's actions had an adverse effect on the public interest. We agree.

Since 1986, South Carolina courts have required that a plaintiff bringing a private cause of action under UTPA allege and prove the defendant's actions adversely affected the public interest. *See Noack Enters., Inc. v. Country Corner Interiors*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986) (initial case finding requirement of adverse impact on public interest), *cert. dismissed*, 294 S.C. 235 , 363 S.E. (2d) 688 (1987) *see also, e.g., LaMotte v. The Punch Line of Columbia*, 296 S.C. 66, 370 S.E. (2d) 711 (1988) (public impact requirement recognized by Supreme Court); *Florence Paper Co. v. Orphan*, 298 S.C. 210 379 S.E. (2d) 289 (1989) (applying public impact requirement). Borrowing from a standard fashioned by the Washington Supreme Court, the court in *Noack Enterprises* found that proof of the potential for repetition of a defendant's actions satisfies the public interest requirement of UTPA. *Noack Enters.*, 290 S.C. at 480, 351 S.E. (2d) at 350-51 (citing *Anhold v. Daniels*, 94 Wash. (2d) 40, 614 P. (2d) 184 (Wash. 1980)). In other words, after alleging and proving facts demonstrating the potential for repetition of the defendant's actions, the plaintiff has proven an adverse effect on the public interest. The plaintiff need not allege or prove anything *further* in relation to the public interest requirement.

Cases decided after Noack Enterprises show this relationship between the potential for repetition of an act and UTPA's public interest requirement. For example, in *Haley Nursery*

*Co. v. Forrest,* 298 S.C. 520, 381 S.E. (2d) 906 (1989), this Court found that UTPA's public interest requirement was satisfied where the plaintiff demonstrated there was a potential for repetition of the defendant's actions. The defendant had sold the plaintiff a large number of mislabeled peach trees. On the invoice sent to the plaintiff, the defendant expressly warranted that "we [the nursery] exercise the greatest care to keep our varieties true to name." The defendant's catalog pledged that "all stock is true to name." In truth, the defendant exercised no care to keep its varieties true to name. *Id.* at 524, 381 S.E. (2d) at 908.

On appeal from a finding that it had violated UTPA, the defendant argued that its breach of the express warranty to the plaintiff did not adversely affect the public interest and, therefore, could not constitute a UTPA violation. This Court disagreed, noting that the defendant included the express warranty at issue on its invoices to *all* customers. The court found that the defendant's "breach of warranty impacts on the public interest because of the potential for repetition by publication of these misrepresentations to other consumers." *Id.* at 524, 381 S.E. (2d) at 908-09. Importantly, the Court did not find that the defendant's breach of its warranty to the plaintiff affected the public interest in any way other than its potential for repetition.

Similarly, in *Dowd v. Imperial Chrysler-Plymouth, Inc.,* 298 S.C. 439, 381 S.E. (2d) 212 (Ct. App. 1989), the Court of Appeals found defendant automobile dealership's deceptive actions adversely affected the public interest because they had the potential for repetition. Defendant Imperial's salesman had represented to the plaintiff that the car that plaintiff was interested in purchasing "had come in off a fleet lease," when, in truth, the car was a Dealer Rent-A-Car ("DRAC").[2] Imperial had trained its salespersons to tell all potential buyers that a car had been leased as a part of a fleet of cars, notwithstanding the possibility the car may have been a DRAC. *Id.* at 441, 381 S.E. (2d) at 213. Because the salesman was *trained* to deceive Imperial's customers, the Court of Appeals found the potential for repetition was apparent. *Id.* at 443, 381 S.E. (2d)

---

[2] "DRAC" is the acronym for "Dealer Rent-A-Car," a car maintained by a dealer for rental on a daily basis. *Dowd,* 298 S.C. at 441, 381 S.E. (2d) at 213.

at 214. Again, other than finding a potential for repetition, the appellate court did not find an additional, separate impact on the public interest resulting from the transaction with the plaintiff.

In *Barnes v. James Chevrolet Co.*, 292 S.C. 607, 358 S.E. (2d) 156 (Ct. App. 1987), the Court of Appeals reversed the trial judge's directed verdict for Defendant Jones Chevrolet, an automobile dealership. The trial judge had granted the directed verdict because he found that Jones Chevrolet's alleged padding of the plaintiff's auto repair bill did not adversely affect the public. The trial judge also had excluded evidence of two other instances of bill padding by Jones Chevrolet. The Court of Appeals found both the directed verdict and the exclusion of the evidence improper. It reasoned that the evidence of the other instances of bill padding was directly relevant to UTPA's public interest requirement because it established a potential for repetition of the defendant's unfair and deceptive acts.

*Noack Enterprises*, as was as *Haley Nursery, Dowd*, and *Jones Chevrolet*, make clear that South Carolina law regards the public interest prong of the UTPA inquiry as satisfied by evidence of a potential for repetition of the unfair or deceptive act. Here, the Court of Appeals erred by holding that evidence of a potential for repetition was, in itself, insufficient to show the public was adversely affected by the defendant's actions. Specifically, the Court of Appeals stated:

> Abbott produced evidence, and the trial judge found, that Daisy's conduct affected the public interest because it has the potential for repetition and because the conduct occurred "in a business setting." *Merely offering evidence, however, that shows a wrongful act has the potential for repetition* or that it occurs in the course of business *is not enough to establish a violation of the UTPA* if, as the evidence shows here, the conduct adversely affects only the parties involved.

*Daisy Outdoor Advertising*, 317 S.C. at —, 451 S.E. (2d) at 397. The Court of Appeals' opinion also appears to hold that a UTPA plaintiff must allege and prove at least *two* separate torts—one against the plaintiff and one against a *third party*— in order to show an adverse impact on the public interest.

This analysis misconstrues South Carolina law in two respects. Prior case law makes very clear that evidence of a potential for repetition, generally speaking, in and of itself establishes the required public impact. The Court of Appeals erred in requiring more. In fact, if evidence of adverse public impact beyond evidence of potential for repetition were required, then *Haley Nursery, Dowd,* and *Jones Chevrolet* would have been decided differently. In each of those cases, the *only* evidence of public impact was the evidence of the potential for repetition. Moreover, we have *never* required proof of torts against third parties (in addition to proof of a tort against the plaintiff) as an element of a cause of action under UTPA, and we decline to do so now.

Because the trial judge found a potential for repetition of Daisy's actions, the Court of Appeals' only task on appellate review was to determine whether the Record contained any evidence to support the trial judge's finding. *See Townes Assoc. v. City of Greenville,* 266 S.C. 81, 221 S.E. (2d) 773 (1976) (standard of review for action at law tried without a jury is whether there is any evidence reasonable supporting trial judge's findings of fact). If the Record contained such evidence, UTPA's public interest requirement was met.

Because the Court of Appeals ruled as a matter of law that Abbott's UTPA claim must be dismissed, it did not analyze the factual support for Abbott's cause of action under UTPA. Therefore, this Court must determine whether the trial judge's finding of a potential for repetition if supported by the Record. In order to determine whether there is evidence to support the finding, we first must clarify what kind of evidence is sufficient to establish a potential for repetition.

Plaintiffs in prior cases generally have shown potential for repetition in two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence (*e.g., Jones Chevrolet*), or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts (*e.g., Haley Nursery, Dowd*). Sometimes, the potential for repetition or other adverse impact on the public interest will be apparent. Conversely, it will sometimes be apparent that an action has no real potential for repetition. For example, unfair or deceptive acts in the sale of a business itself, or in sales

outside the ordinary course of business, are not readily susceptible to repetition and, therefore, have no impact on the public interest. *See, e.g., Noack Enterprises, supra* (finding no impact on public interest where allegedly unfair and deceptive acts occurred in the sale of a business); *Ardis v. Cox*, 314 S.C. 512, 431 S.E. (2d) 267 (Ct. App. 1993) (finding no impact on public interest, at least in part because the defendant did not sell underground petroleum storage tanks in the ordinary course of his business, and allegedly unfair and deceptive acts arose from sale of such tanks), *cert. denied* (1994).

Generally, plaintiffs will prove potential for repetition by the two means described above. We decline to hold, however, that those are the only means for showing potential for repetition/public impact. Rather, each case must be evaluated on its own merits. We expressly reject any rigid, bright-line test that delineates in minute detail exactly what a plaintiff must show to satisfy the potential for repetition/public impact prong of the UTPA test.

Here, Abbott offered some evidence of potential for repetition. He produced evidence of similar acts: The action complained of—Daisy's intentionally blocking Abbott's signs—was repeated (Daisy blocked the Clarkson sign; later, it blocked the Hamrick's sign). Furthermore, Hamrick's, at least, was injured by Daisy's actions. Obviously, Hamrick's had a reason for wanting a billboard advertisement in a certain place on I-85 near Gaffney, where its main state is located. Daisy's actions deprived Hamrick's of its long-term choice of location for its advertisement. As Judge Connor noted in her dissent, Hamrick's falls under UTPA's definition of "person." *See* S.C. Code Ann. § 39-5-10(a) (1985). As a member of the public, albeit a commercial member, Hamrick's was entitled to protection from Daisy's unfair and deceptive acts. We conclude that based on the evidence presented, the trial judge reasonably could have found Daisy's actions had the potential for repetition and, therefore, adversely affected the public interest.

## B. *Damages*

Daisy argues the Court of Appeals erred in affirming the trial judge's finding of damages as to the Clarkson sign at the radio station property. The judge's finding as to the damages Abbott sustained because of Daisy's interference with

Abbott's contract with Clarkson has evidentiary support in the Record. Accordingly, we affirm the finding of damages.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is AFFIRMED IN PART AND REVERSED IN PART.

FINNEY, C.J. and MOORE, WALLER and BURNETT, JJ., concur.