Fred L. HATFIELD, Sr., Dorothy Hatfield, Clifton Reynolds, Dottie Reynolds, HVAC Construction Company, Inc., and Carolina Security and Fire, Inc., Plaintiffs,

v.

CONTROL SYSTEMS INTERNATIONAL and/or Delaware Corp., Defendants.

No. CIV.A. 3:95–1577–23.

United States District Court,
D. South Carolina,
Columbia Division.

March 14, 1997.

James Edward Bell, III, Bell & Moore, Sumter, SC, for plaintiffs.

Kimila L. Wooten, Ogletree, Deakins, Nash & Stewart, Greenville, SC, David G. Surratt and Jeffrey A. Brannen, Canterbury, Stuber, Pratt, Elder & Gooch, Dallas, TX, for defendants.

## ORDER

DUFFY, District Judge.

This matter is before the court on defendant's motion to dismiss pursuant to Fed. R.Civ.P. 12(b) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Oral arguments were heard on January 17, 1997, and the court took the motion under advisement. Upon further consideration, the court hereby grants defendant's motion for summary judgment.

## I. BACKGROUND

Control Systems International ("CSI") is a corporation headquartered in Dallas, Texas, which manufactures direct digital control systems for heating and air conditioning units in industrial buildings. CSI has a dual distribution system: (1) CSI will sell directly to customers who contract with electrical subcontractors to perform hardware and wiring installation while CSI employees are used to perform database installation or (2) CSI will sell to value-added resellers ("VARs") who have been trained at CSI headquarters and have contracts with CSI. HVAC Construction Co. ("HVAC") and Carolina Security and Fire, Inc. ("Carolina Security") are mechanical and security contractors based in South Carolina.

On or about September 30, 1991, HVAC bid on two contracts to update heating and air-conditioning systems at Ft. Jackson, South Carolina. The bids specified that CSI equipment would be used. HVAC did not use the authorized CSI subcontractor, Larry Bironas, in its successful bid, but, instead

used Larry Cantrell. Cantrell had installed similar systems in the past at a lower price than Bironas, although apparently none of them were CSI systems. In order to use Cantrell on the job, the government required CSI authorization of Cantrell.

A CSI account representative, Kirk Northington, sent a letter to Cantrell to submit to contracting officer Gloria Brown which stated:

> This letter is in confirmation of your Purchase Order ... for the HVAC project at Charleston Air Force Base, Building 215.
>
> As per our previous understanding, we will provide the necessary CSI System 7000 components and some engineering support where needed. We are in understanding that Electromatic will perform all control system installation. In our opinion Electromatic is qualified to perform CSI System 7000 installation.

Plaintiffs contend that although the letter refers to the Charleston AFB, Northington knew that there was no such project and that the equipment was to be used at Ft. Jackson pursuant to an alleged oral contract between Cantrell and Northington. Defendant contends that even if this were true, Northington was obviously acting outside of the scope of his employment, and the alleged oral contract is not attributable to CSI.

When Fred Hatfield of HVAC was asked by Ft. Jackson officials about the reference to Charleston AFB, Hatfield replied that the letter applied to Ft. Jackson, and this explanation initially was accepted. Subsequently, CSI delivered the equipment to Cantrell who began the installation process at Ft. Jackson. After inquiries by Bironas as to Electromatic's CSI authorization, Jan Whittemore, the contract administrator for Ft. Jackson, contacted CSI to determine Electromatic's status. Northington replied that Electromatic was not an "authorized" VAR. An authorized installer must have CSI approval on any project to do engineering, start-up, and programming, as well as the installation itself. Eventually, Mike Busby, a CSI regional manager in Dallas was contacted by contracting officer Brown inquiring about the CSI

authorization of HVAC, Carolina Security, Electromatic, and Cantrell. Busby replied by letter that CSI was not in any way associated with them, and they were not CSI VARs. Plaintiffs argue that this letter did not accurately respond to Brown's inquiry as to whether they were authorized to install CSI systems because the letter provided more information than solicited.

Ultimately, HVAC was defaulted from the two projects at Ft. Jackson because of the failure to obtain an authorization letter from CSI. Carolina Security was apparently terminated when the government realized that Hatfield was utilizing Carolina Security to bid contracts at Ft. Jackson.[1]

The bonding companies for HVAC's contracts made payments on the contracts and received indemnity from plaintiffs Fred and Dorothy Hatfield. In addition, the bonding companies have filed suit against Cliff and Dottie Reynolds for indemnity. Plaintiffs filed the present suit on April 21, 1995, alleging breach of contract, tortious interference with a contract, a violation of the Unfair Trade Practices Act ("UTPA"), breach of contract accompanied by a fraudulent act, civil conspiracy, a violation of the Sherman Antitrust Act ("Act") under 15 U.S.C. § 1, together with various causes of action relative to the individual plaintiffs having to make payments under their indemnity agreements.

Because the court has considered evidence outside of the pleadings, the court has construed defendant's motion as a motion for summary judgment as provided in Fed. R.Civ.P. 56. *See* Fed R. Civ. P. 12(b).

## II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails

---

1. The second project was obtained by Carolina Security with a similar CSI requirement.

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.,* 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Finally, the "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir.1995)(quoting *Pachaly v. City of Lynchburg,* 897 F.2d 723, 725 (4th Cir.1990)), *cert. denied,* 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995).

### III. ANALYSIS

#### A. Authority of an Agent

Plaintiffs assert that an oral contract existed with defendant through Northington's alleged representations. Defendant contends that even if a contract existed between Northington and plaintiffs, Northington was acting outside his authority. One who alleges the existence of principal-agent relationship must show that the alleged agent had real or apparent authority to act for the principal. *Fochtman v. Clanton's Auto Auction Sales,* 233 S.C. 581, 106 S.E.2d 272, 274–75 (S.C.1958). A principal can always limit the authority of an agent. *Glens Falls Indemnity Co. v. Palmetto Bank,* 23 F.Supp. 844, 849 (W.D.S.C.1938). Furthermore, the limitation of authority imposed by a principal is binding on third parties that are dealing with the agent if the limitation is

communicated to them. *Glens Falls Indemnity,* 23 F.Supp. at 849; Restatement (Second) of Agency § 166 (1958); *see also Miller v. Premier Corp.,* 608 F.2d 973, 980 (4th Cir.1979) (Principal is responsible for unauthorized acts of an agent subject to the other party not having notice that representations were untrue or unauthorized.); *Pasco County Peach Ass'n v. J.F. Solley & Co.,* 146 F.2d 880, 883 (4th Cir.1945) ("[A] principal can always limit authority of his agent, and if limitation is brought to the attention of the parties dealing with the agent, the limitation must be respected by such parties."); *Liberty Heating & Cooling, Inc. v. Builders Square, Inc.,* 788 F.Supp. 1438, 1445–46 (E.D.Mich.1992) ("[P]rincipal not bound where his agent lacks authority and the person dealing with the agents [*sic*] knows or should know that the agent lacks authority.")

In his deposition, Cantrell testified that Northington said that he (Northington) would lose his job if the sale of equipment for use at Ft. Jackson continued. (Cantrell Dep. at 31). Furthermore, Hatfield testified in his depositions:

> Mr. Northington told me that there was a way around the specifications, that he couldn't sell the equipment to go to Fort Jackson but he could sell us the equipment and we could use it wherever we wanted to.

(Hatfield Dep. at 36). In their reply brief, plaintiffs attempt to qualify this statement by stating:

> although Kirk Northington at one time stated he could not sell CSI equipment for use at Fort Jackson, he later represented to the plaintiffs that he had found a legitimate way in which to do so. . . . It was only in a later conversation that Kirk Northington expressed some concern about his company's policy that the corporate branch not sell to Ft. Jackson.

(Plaintiffs's Reply at 11). However, the deposition testimony clearly shows that even assuming plaintiffs' allegation is true and the oral agreement existed, any claims are defeated because of Northington's lack of authority to enter into the alleged contract and plaintiffs' knowledge thereof. This includes

plaintiff's claims based on breach of contract, fraud, negligent misrepresentation, interference with contract, breach of contract accompanied by a fraudulent act, and UTPA. Cantrell testified in his deposition about having to receive the equipment through Charleston because Northington said that was the only way to ship the equipment. (Cantrell Dep. at 50–51). Thus, plaintiffs could not have relied on Northington's representations because of their actual knowledge of Northington's lack of authority to sell any equipment for Ft. Jackson. Without the right to rely, plaintiffs have no claim for fraud, negligent misrepresentation, and breach of contract accompanied by a fraudulent act.

In addition, plaintiffs have no claim for tortious interference with contract because CSI is justified in voiding any unauthorized actions of its agents.

## B. Unfair Trade Practices Act

 Plaintiffs have no claim under UTPA because the UTPA requires an adverse impact on the public interest. *E.g.*, *First Union Mortgage Corp. v. Thomas*, 317 S.C. 63, 451 S.E.2d 907, 915 (S.C.Ct.App. 1994). Plaintiffs argue that the public interest element is satisfied because defendant's acts are capable of repetition. Potential for repetition can be shown in two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence, or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts. *Daisy Outdoor Advertising Co., Inc. v. Abbott*, 322 S.C. 489, 473 S.E.2d 47, 51 (S.C.1996). Although the South Carolina Supreme Court declined to hold that these are the only ways to show repetition, *id.*, the Act is not available to redress private wrong where public interest is unaffected. *Noack Enterprises, Inc. v. Country Corner Interiors, Inc.*, 290 S.C. 475, 351 S.E.2d 347, (S.C.Ct.App.1986). Plaintiffs merely make the conclusory statement that the public interest requirement can be met "... by showing that the particular practice has the potential for repetition." (Plaintiffs' Response at 33). Without any recognizable evidence showing that the particular practice has the potential for repetition, the court finds no adverse impact on the public warranting a claim under UTPA.

## C. Sherman Antitrust Act

 Every contract, combination in the form of a trust or otherwise, or conspiracy in restraint of trade or commerce violates the Sherman Antitrust Act. *Blanton Enterprises, Inc. v. Burger King, Corp.*, 680 F.Supp. 753, 758–59 (D.S.C.1988). To prevail on a claim under the Act, plaintiffs must show evidence of concerted action. *Id.* at 759. Plaintiffs allege that "the tacit agreement between CSI and Bironas pursuant to which CSI's branch office would refrain from selling to Ft. Jackson on a turn key basis and would refer all inquiring contractors to Bironas, Inc.," is a violation of the Act. (Complaint at 29.) Defendant contends that there was no such agreement. Defendant denies the existence of any such agreement and offers as evidence the fact that Bironas' company performed less than fifty-percent (50%) of the work at Ft. Jackson which specified CSI products. Direct proof of an express agreement is not required and inferences may be drawn from circumstantial evidence; however, there is a distinction to be drawn between reasonable inference and mere speculation. *Blanton*, 680 F.Supp. at 759. In light of Bironas' company performing less than fifty-percent (50%) of the work at Ft. Jackson which specified CSI products, the court finds that plaintiffs' contentions are too speculative to set forth a claim under the Act.

 Defendant admits that Bironas, as a CSI VAR, made complaints about CSI competing at Ft. Jackson and that it chose as a corporate policy not to have its Charlotte branch compete there. Nonetheless, a conspiracy will not be inferred because a manufacturer responds to a dealer's complaints. *Id.* at 761 (citing *Garment District, Inc. v. Belk Stores Services, Inc.*, 799 F.2d 905, 909 (4th Cir.1986)). The moving party in a summary judgment motion must "produce evidence that tends to exclude the possibility that the alleged conspirators acted independently." *Id.* at 760 (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1357, 89

L.Ed.2d 538 (1986)). Furthermore, " 'if [defendant] had *no rational economic motive to* conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy.' " *Id.* (quoting *Matsushita,* 106 S.Ct. at 1361 (citations omitted)). Plaintiffs have not presented any evidence of any such motive.

 Plaintiffs further contend that defendant participated in "bid-rigging" in violation of the Act and that there was an agreement entered into with the purpose and effect of fixing prices. To support this contention, plaintiffs allege the following: (a) that CSI chose to refrain from selling to Fort Jackson on a turnkey basis; (b) that CSI personnel referred inquiring contractors solely to Bironas; (c) that CSI received all or almost all of the CSI work at Fort Jackson; and (d) that CSI took actions to insure that plaintiffs were taken off of the Ft. Jackson job once it discovered that plaintiffs were performing work there. Even viewing this evidence in the light most favorable to plaintiffs, the court finds that CSI simply gave truthful responses to inquiries from the contracting officer, and that plaintiffs' allegations are "mere speculation" rather than a "reasonable inference."

### D. Civil Conspiracy

A claim for civil conspiracy must allege additional facts in furtherance of a conspiracy rather than reallege other claims. *Todd v. South Carolina Farm Bureau Mutual Ins. Co.,* 276 S.C. 284, 278 S.E.2d 607, 611 (S.C.1981). Plaintiffs failed to allege any additional facts in furtherance of the alleged conspiracy.

### E. Remaining Causes of Action

Plaintiffs allege additional causes of action that the individual plaintiffs were injured as a result their personal guaranties. Plaintiffs fail to state these claims under any cognizable legal theory. No contract has been alleged between defendant and the individual plaintiffs, and no negligence has been al-

leged. Furthermore, because the corporate plaintiffs have no remaining causes of action against defendant, there are no claims by which the individual plaintiffs are entitled to recover damages through subrogation.

### IV. CONCLUSION

It is therefore,

**ORDERED** for the foregoing reasons that Defendant's motion, construed as a Motion for Summary Judgment, is **GRANTED** as to all causes of action.

**AND IT IS SO ORDERED.**[2]

---

**2.** An additional letter was submitted on behalf of plaintiffs subsequent to the hearing which was considered by the court in its decision. Thus, defendant's motion to exclude the letter is denied.