**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

Melissa J. Lackey-Oremus and James T. Oremus, Appellants,

v.

4 K & D Corporation, d/b/a Grand Estates Auction Company, Stacy Kirk and Valaria Devine, Respondents.

Appellate Case No. 2014-001579

———————————

Appeal From Aiken County
Doyet A. Early, III, Circuit Court Judge

———————————

Unpublished Opinion No. 2016-UP-253
Heard April 12, 2016 – Filed June 8, 2016

———————————

### REVERSED

———————————

Robert L. Buchanan, Jr., of Buchanan Law Office, P.A., and Robin A. Braithwaite, of Braithwaite Law Firm, both of Aiken, for Appellants.

Alice F. Paylor and Russell Britton Kelly, both of Rosen, Rosen & Hagood, LLC, of Charleston, for Respondents.

———————————

**PER CURIAM:**  Melissa J. Lackey-Oremus and James Oremus (Appellants) appeal the circuit court's partial grant of the motion for summary judgment filed by 4 K & D Corporation d/b/a Grand Estates Auction Company (Grand Estates), Stacy Kirk, and Valaria Devine (Respondents).  Appellants argue the circuit court erred by granting summary judgment to Devine on their claim for fraud because they produced evidence that would allow a jury to reasonably find Devine, as the sole shareholder and chief executive officer of Grand Estates, participated in the incident and, thus, she can be held liable in her individual capacity.  Appellants also claim the circuit court erred by granting summary judgment to Respondents on their claim based on the South Carolina Unfair Trade Practices Act (UTPA) because they produced evidence showing Respondents' alleged actions have the potential for repetition.  We agree and reverse.

1.  We find the circuit court erred by granting summary judgment to Devine on Appellants' fraud claim because Appellants produced more than a scintilla of evidence tending to show Devine was personally involved and participated in the acts leading to the fraud claim.  *See Turner v. Milliman*, 392 S.C. 116, 124-25, 708 S.E.2d 766, 770 (2011) (noting a plaintiff must prove a fraud claim "by clear and convincing evidence; thus, more than a mere scintilla of evidence must be presented to withstand a motion for summary judgment"); *Rowe v. Hyatt*, 321 S.C. 366, 369, 468 S.E.2d 649, 650 (1996) (finding an officer or director of a corporation "is not, merely as a result of his or her status as such, personally liable for the torts of the corporation.  To incur liability, the officer, director, or controlling person must ordinarily be shown to have in some way participated in or directed the tortious act").[1]  Here, Appellants produced more than a scintilla of

---

[1] We note other jurisdictions follow a similar general rule regarding personal liability of corporate officers and directors.  *See Sturm v. Harb Dev., LLC*, 2 A.3d 859, 866-67 (Conn. 2010) ("[A] director or officer who commits the tort or who directs the tortious act done, or participates or operates therein, is liable to third persons injured thereby, even though liability may also attach to the corporation for the tort."); *White v. Collins Bldg., Inc.*, 704 S.E.2d 307, 310 (N.C. Ct. App. 2011) ("It is well settled that one is personally liable for all torts committed by him, including negligence, notwithstanding that he may have acted as agent for another or as an officer for a corporation." (quoting *Strang v. Hollowell*, 387 S.E.2d 664, 666 (N.C. Ct. App. 1990))); *Brown v. Rentz*, 441 S.E.2d 876, 878 (Ga. Ct. App. 1994) (explaining "it is well established that an officer of a corporation who takes

evidence tending to show Devine personally participated in the alleged fraudulent conduct.

In the light most favorable to Appellants, Devine called Desiree Watson shortly after the auction and instructed her to refer any inquiries about the auction to her or Kirk. Devine also told her to report the winning bid for the property as $2,000,000 "nod nod, wink wink." Devine called Watson again later that day to inform her the auction "had almost been a disaster" but she and Kirk performed "quick thinking on their feet" and "saved the day." Devine also explained to Watson the process of convincing Appellants "to withdraw their winning bid." Devine instructed Watson to remove the names of the contact persons and bidders associated with the property from Grand Estates' computer system.

There was additional circumstantial evidence provided by Devine tending to show her personal involvement with the events following the auction. *See Cook v. Metropolitan Life Ins. Co.*, 186 S.C. 77, 84, 194 S.E. 636, 639 (1938) ("Fraud may be deduced not only from deceptive or false representations, but from facts, incidents, and circumstances which may be trivial in themselves, but decisive in a given case of the fraudulent design. It is a state of mind, dependent on intent, which is provable by circumstantial evidence."). Devine admitted to speaking with William Higgins, the auctioneer, on the telephone twice after the auction. She also spoke with Grand Estates' attorney, Kirk, and the sellers after the auction. Devine acknowledged speaking with Kirk regarding the releases signed by Appellants and instructed Kirk to present the releases to Appellants. Devine dictated the language in the releases to Kirk based on her conversation with the attorney. Additionally, Karl Hirschhorn, one of the sellers, spoke with Devine shortly after the auction concluded, and she informed him of the results. It was a three-way telephone call with Devine and Kirk. Devine also informed him of the potential bidder who Kirk excluded, and they discussed the possibility of obtaining a release from Appellants. Although Devine offers plausible, innocent explanations for her actions after the auction, when viewed with other circumstantial evidence and in the light most favorable to Appellants, a jury could reasonably find Devine was participating in the alleged fraudulent conduct.

---

part in the commission of a tort by the corporation is personally liable therefor" (internal quotation marks omitted)).

To the extent Devine argues the releases signed by Appellants bar this action, the releases do not mention Devine. Even if enforceable, the releases named only Grand Estates, the sellers, Higgins, and the real estate broker. Thus, Devine cannot claim immunity for personal liability based on the releases.

Furthermore, regarding Appellants' fraud claim, Respondents proffer multiple other grounds for affirming the grant of summary judgment for Devine and reversing the denial of summary judgment for Grand Estates and Kirk. Respondents claim the alleged misrepresentations were not material and Appellants had no reasonable right to rely on them. We believe this Court is foreclosed from considering these arguments with regard to Grand Estates and Kirk because the circuit court denied summary judgment to them on Appellants' fraud claim, and the denial of summary judgment is not appealable or reviewable. *See Olson v. Faculty House of Carolina, Inc.*, 354 S.C. 161, 167-68, 580 S.E.2d 440, 443-44 (2003) (finding the denial of summary judgment is not immediately appealable even when accompanied by a proper appeal of the grant of summary judgment on a separate issue); *AJG Holdings LLC v. Dunn*, 392 S.C. 160, 167, 708 S.E.2d 218, 222 (Ct. App. 2011) ("Because the circuit court *denied* summary judgment, we are prohibited from reviewing that ruling pursuant to [*Olson*].").

With regard to Devine, we construe Respondents' arguments regarding materiality and reasonable reliance as additional sustaining grounds, which this Court has discretion to consider. The circuit court found genuine issues of material fact existed on the elements of materiality and reasonable reliance and we agree. We believe whether the alleged misrepresentation was material and whether Appellants reasonably relied upon the misrepresentation are questions properly submitted to a jury in this case. *See Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 475, 581 S.E.2d 496, 504 (Ct. App. 2003) ("The general rule is that questions concerning reliance and its reasonableness are factual questions for the jury.").

Because there was evidence from which a jury could find Devine was personally involved and participated in the events, Devine could be personally liable even though she may not have made the representations to Appellants. Furthermore, Devine's position as chief executive officer could not shield her from personal liability if she was personally involved and participated in the events. Accordingly, we reverse.

2. We find the circuit court erred by granting summary judgment to Respondents on Appellants' UTPA claim because the alleged unfair acts affected the public

interest by having the potential for repetition. *See Daisy Outdoor Adver. Co. v. Abbott*, 322 S.C. 489, 493, 473 S.E.2d 47, 49 (1996) ("Since 1986, South Carolina courts have required that a plaintiff bringing a private cause of action under UTPA allege and prove the defendant's actions adversely affected the public interest."); *id.* (explaining a plaintiff can satisfy the public interest requirement by showing the defendant's actions have "the potential for repetition"); *id.* ("The plaintiff need not allege or prove anything *further* in relation to the public interest requirement."); *id.* at 497, 473 S.E.2d at 51 (explaining "each case must be evaluated on its own merits," and there is no "rigid, bright line test that delineates in minute detail exactly what a plaintiff must show to satisfy" the potential for repetition requirement); *id.* at 496-97, 473 S.E.2d at 51 (noting examples of actions with no real potential for repetition include "unfair or deceptive acts in the sale of a business itself[] or in sales outside the ordinary course of business").

Our case law does not reveal a requirement that a plaintiff show a defendant's unfair acts have been repeated, rather a plaintiff must show only that the acts have the potential for repetition. In *York*, the plaintiff purchased a truck after the dealer represented the truck was "like new" and had never been titled to an individual. *York v. Conway Ford, Inc.*, 325 S.C. 170, 172, 480 S.E.2d 726, 727 (1997). The truck experienced mechanical trouble almost immediately, and a third-party mechanic told the plaintiff the truck had a bent frame from a previous accident. *Id.* At trial, the trial court directed a verdict in the defendant's favor on the plaintiff's UTPA claim after ruling the defendant's act did not impact the public interest. *Id.* at 173, 480 S.E.2d at 728. Our supreme court found the trial court erred because the defendant was "in the business of selling cars," and "[c]ertainly, the alleged acts or practices [had] the potential for repetition." *Id.* In *York*, there was no evidence tending to show any other occurrence of the defendant engaging in that type of unfair act, but our supreme court still found the defendant's actions had the potential for repetition.

We find Respondents' alleged acts had the potential for repetition and affected the public interest. Taken in the light most favorable to Appellants, Respondents held an absolute auction to sell real estate. When Respondents were disappointed with the amount of Appellants' winning bid, they quickly concocted an erroneous story about improperly excluding a bidder who had a higher opening bid. Respondents used this story to coerce Appellants into releasing their winning bid, and eight days later, Respondents sold the property to a different buyer who was never involved with the auction for an additional $625,000. Respondents netted an extra $50,000 in fees by employing this scheme.

We believe these facts showed the potential for repetition because Respondents marketed and sold high end real estate in the ordinary course of their business. Grand Estates was in the business of holding auctions to sell luxury properties. Also, Respondents intentionally committed these acts for economic gain. Thus, we find there is ample potential for Respondents to engage repetitively in this type of scheme. Accordingly, Respondents' alleged acts affected the public interest, and we reverse.

**REVERSED.**

**SHORT and THOMAS, JJ., and CURETON, A.J., concur.**