2241

Kenneth JEFFERIES, Respondent v. Ned PHILLIPS, d/b/a Ned Phillips Construction Company, Appellant.

(451 S.E. (2d) 21)

Court of Appeals

---

*Richard H. Rhodes, Burts, Turner, Rhodes & Thompson,* Spartanburg, *for appellant.*

*Alexander Hray, Jr., Leatherwood, Walker, Todd & Mann,* Spartanburg, *for respondent.*

Heard Sept. 8, 1994.

Decided Oct. 10, 1994; Reh. Den. Nov. 29, 1994.

HOWARD, Acting Judge:

This appeal arises from the award of damages to respondent, Kenneth Jefferies, under the South Carolina Unfair Trade Practices Act. The trial court found that Ned Phillips violated the Act by "padding" an estimate for structural repairs to Jefferies' house. Phillips appeals the award. We reverse.

In October of 1991 Jefferies entered into a contract to sell his Gaffney residence. Three days prior to closing, Jefferies received a termite letter that indicated termites had caused structural damage, which included a wall sagging approximately six to eight inches. The damage required immediate repair before the sale could be closed. Jefferies contacted Phillips, a licensed builder, who prepared an estimate of $7500 for the necessary repairs. Jefferies signed the estimate and closed on the house before the repairs were actually made. The estimate generally described the necessary repairs as follows:

1. Remove enough floor in rear of house to repair rotten floor joice [sic]
2. Repair rotten floor joice [sic] and replace subfloor and under layment
3. Dig out from under floor joice [sic] to have 8-inch cle[a]rance between joice [sic] and ground
4. Treat house for termites and power post beatles [sic]
5. Replace floorcovering in rooms where removed and install carpet in den instead of hardwood

Phillips started the work on November 14, 1991. This work included the removal of dirt from under the house to create an eight-inch clearance, the repair of two floor joists by "scabbing" new joists onto existing joists, and the bracing of existing joists with cinder blocks. To access the areas needing repairs, phillips cut a hole approximately four feet by eight feet in the floor between the den and the dining room, which was subsequently covered by plywood. Carpet was laid over the plywood in the den, while vinyl was laid in the dining room. The testimony was in conflict on how many days it took to complete these repairs. The master found the repairs took two and one-half days, while Phillips testified it took seven days.

After the repairs were completed, Jefferies asked Phillips if he had actually done all the work that he said he was going to do. Phillips acknowledged that he did not have to cut a hole in the kitchen floor as he had expected to do in the estimate, and, therefore, Phillips reduced the total price to $7200. Jefferies paid this amount.

When the purchaser moved into the house, he notified Jefferies that the floor in the bedroom was still sagging so much he could put his hand under the baseboard. Jefferies then filed a complaint with the Residential Home Builders Association (RHBA). The RHBA inspected the house and required Phillips to make additional repairs, including removal of more dirt and scabbing of other floor joists.[1]

Prior to this additional work, but after completion of the

[1]The testimony is in conflict as to how many joists were repaired at this time. Throughout the trial, Phillips could not state with certainty how much work was originally done, what materials were used or how much the materials cost, how many hours were required to complete the job, or how much additional work was required by the RHBA.

original work, Jefferies hired another licensed builder, Billy Blackwell, to look at Phillips' repairs and prepare an estimate for what he would have charged to do the same work. Blackwell's original estimate was $1800. At trial, however, Blackwell became aware much more dirt had been removed than he had thought, and he first learned of the later repairs by Phillips. Blackwell was also not aware the house had been "jacked." Blackwell stated his original estimate would have to be increased, but it is not completely clear from the record how much the total increase would be.

After receiving Blackwell's estimate, Jefferies brought this action against Phillips, alleging unjust enrichment[2] and violation of the South Carolina Unfair Trade Practices Act (UTPA), S.C. Code Ann. Section 39-5-20 (1985).

The case was tried by consent before the master-in-equity for Cherokee County, who held that Phillips had padded the estimate. Relying on this court's decision in *Barnes v. Jones Chevrolet Co.*, 292 S.C. 607, 358 S.E. (2d) 156 (Ct. App. 1987), the master held this action was an "unfair and deceitful practice" prohibited by the UTPA. The master awarded Jefferies $5000 in actual damages, which was based on the difference between Jefferies' charge and the master's modification of the estimate given by Blackwell. The damages were trebled to $15,000, plus attorney's fees. *See* § 39-5-140 (UTPA) (allowing treble damages where the violative conduct was willful and knowing and reasonable attorney's fees).

The mater concluded that Phillips padded the estimate because he

> knew when he gave [Jefferies] the estimate that the job would not require what he told [Jefferies] he would do. [Jefferies] did not know that. [Jefferies] had the right to rely upon [Phillips'] representation as to what was required and he did so and the amount was based upon [Phillips] doing what he told [Jefferies] was needed.

The master specifically found from Jefferies' testimony that Phillips had told Jefferies he would have to "replace" the floor joists, even though Phillips knew he would not have to re-

---

[2]The master denied the unjust enrichment claim. Neither party has questioned this ruling.

place them. This alleged representation led Jefferies to believe that the job would entail more work than the work actually performed. Therefore, the master found that Jefferies "did not get what he bargained for."

A claim under the UTPA is an action at law. *Payne v. Holiday Towers, Inc.*, 283 S.C. 210, 321 S.E. (2d) 179 (Ct. App. 1984). Therefore, this court will correct any error of law, but we must affirm the master's factual findings unless there is no evidence that reasonably supports those findings. *Townes Assocs. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976).

Phillips argues that the master erroneously extended the application of the UTPA because there is no evidence that he deceived others. We agree.[3]

To be actionable under the UTPA, an unfair or deceptive practice or act must adversely affect the public interest. *Florence Paper Co. v. Orphan*, 298 S.C. 210, 379 S.E. (2d) 289 (1989); *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 351 S.E. (2d) 347 (Ct. App. 1986). Therefore, conduct which only affects the parties to the transaction provides no basis for a UTPA claim. *See Key Co. v. Fameco Distribs., Inc.*, 292 S.C. 524, 357 S.E. (2d) 476 (Ct. App. 1987).

This adverse effect on the public must be proved by specific facts. As this court recently stated, "Without · proof of specific facts disclosing that . . . members of the public were adversely affected by [the unfair conduct] or that they were likely to be, all we are left with is a 'speculative [claim] of adverse public impact' and that will not suffice for a recovery under the UTPA." *Daisy Outdoor Advertising Co. v. Abbott*, — S.C. —, —, — S.E. (2d) —, —, Op. No. 2224 (S.C. Ct. App. filed Sept. 6, 1994) (Davis Adv. Sh. No. 20, at

---

[3]Phillips also challenges certain findings of fact which he alleges are not supported by the evidence. Phillips acknowledges in his brief that some of the facts are harmless, but argues that "the collective impact of these arguments demonstrate[s] that the Lower Court improperly decided the case." Given our ruling that the transaction at issue does not fall within the scope of the UTPA, we need not decide the other issues raised by Phillips. *See Nolas Trading Co. v. South Carolina Dep't of Health & Envtl. Control*, 289 S.C. 345, 345 S.E. (2d) 507 (Ct. App. 1986) (where reversal on an issue would have no practical legal effect, the issue is moot, and the Court of Appeals need not reach it).

47, 51) (quoting *Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.,* 974 F. (2d) 502, 507 (4th Cir. 1992)). Jefferies introduced no evidence of specific facts which show any member of the public was adversely affected by this transaction. Without this showing, Phillips' conduct cannot be said to affect anyone other than the parties to this controversy, in which case the conduct falls outside the scope of the UTPA.

In *Barnes,* 292 S.C. at 613, 358 S.E. (2d) at 159-60, this court held padding an automobile repair bill affects the public interest because of its potential for repetition. Relying upon this case, Jefferies argues that because Phillips padded the estimate, his conduct has the potential for repetition. Therefore, Phillips' conduct affected the public interest.

We find the reliance on *Barnes* is misplaced for two reasons. First, in *Barnes,* the plaintiff had paid an itemized bill for the repair of his automobile by an automobile dealer. The plaintiff later learned the bill charged him for parts not used and labor not performed. *Id.* at 609, 358 S.E. (2d) at 158. The trial court did not allow the plaintiff to proffer evidence of two prior occurrences of padding by this same defendant. *Id.* at 612, 358 S.E. (2d) at 159. This court held that evidence of similar transactions was relevant on the issue of potential for repetition, and exclusion of that evidence was reversible error. *Id.* at 613, 358 S.E. (2d) at 160. This court then stated that "padding auto repair bills affects the public interest because of its potential for repetition." *Id.* Relying upon this statement, the master concluded that the action of "padding" a bill would, in any setting, violate the UTPA. Finding that Phillips padded the estimate, the master concluded that Phillips violated the Act.

The master read *Barnes* too broadly. *Barnes* cannot be extended to reach every padding case absent proof of public impact. To do so would render evidence of similar transactions unnecessary, which would then render a trial court's error in refusing that evidence harmless. *Barnes* clearly held that such error was not harmless. Therefore, the ruling in *Barnes* must be read in light of the circumstances of that case. Each case must still be analyzed to determine whether the wrongful conduct impacts upon the public, whether through the circumstances of the transaction or through evidence of other

similar acts.

There is no evidence in this case of other similar acts. Nor are there any facts to establish or infer that Phillips' conduct has a potential for repetition, such that it affects the public. In the course of human endeavor, every action has some potential for repetition. The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element. Since Jefferies presented no evidence that Phillips' conduct affected the public interest, he failed to prove a violation of the UTPA. *See also Columbia East Assocs. v. Bi-Lo, Inc.*, 299 S.C. 515, 386 S.E. (2d) 259 (Ct. App. 1989) (affirming a directed verdict for the defendant because the plaintiff failed to prove the defendant's conduct affected the public).

Second, there is no evidence that Phillips padded the estimate. Padding involves charging for an item or service which in fact was not provided. *See Barnes*, 292 S.C. at 609, 358 S.E. (2d) at 158. We find no evidence that Phillips actually charged for work not done. He performed all the work required by the estimate: He "repaired" rotten floor joists. He removed only enough floor to do these repairs. He removed the dirt for the proper clearance. He had the house treated for termites by a third party. Finally, he replaced the floorcovering where it had been removed.

These parties entered into a contract whereby Phillips agreed to do the described work for a set price. The contract provides for the "repair" of floor joists, not replacement, even if Jefferies' initial understanding was to the contrary. Jefferies signed and paid this estimate. The record contains no evidence Phillips actually charged Jefferies to replace floor joists rather than repair them, or Phillips represented to Jefferies after the work was completed the joists had been replaced.

Because there is no evidence Phillips' conduct affected the public interest, Jefferies failed to prove his UTPA claim. Accordingly, the judgment of the master is

Reversed.

SHAW and GOOLSBY, JJ., concur.