**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Rita Brooks, Respondent,

v.

Velocity Powersports, LLC, American Honda Finance Corporation and American Honda Motor Co., Inc., Defendants,

Of which Velocity Powersports, LLC is the Appellant.

Appellate Case No. 2019-000025

———————————

Appeal From Berkeley County
Dale Van Slambrook, Master-in-Equity

———————————

Unpublished Opinion No. 2021-UP-400
Submitted September 1, 2021 – Filed November 10, 2021

———————————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————————

Mary Leigh Arnold, of Mary Leigh Arnold, PA, of Mount Pleasant, for Appellant.

Edward J. Dennis, IV, of Dennis Law Firm, LLC, of Moncks Corner, and Donald Bruce Clark, of Donald B. Clark, of Charleston, both for Respondent.

**PER CURIAM:** Velocity Powersports, LLC appeals the Master-in-Equity's ruling it committed unfair trade practices connected with its servicing of Rita Brooks' Honda jet ski and awarding Brooks treble damages, attorney's fees, and costs. We affirm in part, reverse in part, and remand to the Master for determination of reasonable attorney's fees.

## I. *Facts*

Brooks bought the Ski from Velocity in 2010 for $12,829.01. In 2012, Brooks began having engine and other trouble with the Ski. On April 9, 2012, she took the Ski to Velocity for repairs and a "tune-up," which included an oil change and replacing spark plugs. Brooks was told some services would be covered under her warranty but the tune-up would not.

Brooks signed a repair order reflecting the tune-up service would cost $200.19 and she would be charged a storage fee of $25 per day she did not retrieve the Ski within five days of "completion."

Between April 24, 2012, and May 7, 2012, Brooks repeatedly contacted Velocity to check on the progress of the repairs. On May 21, 2012, Brooks returned to Velocity and found the Ski in the back lot partially disassembled. Velocity had run diagnostics on the Ski and "water tested" it but was unable to identify the source of the problems.

Velocity determined there was no point in continuing to work on the Ski unless it conducted a "teardown" for more comprehensive diagnostics. Per Velocity's policy, a teardown required customer approval. A technician report dated May 22, 2012, indicated the tune-up or "summerization" service was performed on the Ski and Velocity charged Brooks $219.92. Also, on that date, Velocity called Brooks and stated they would no longer perform services on the Ski and Brooks needed to come pick up the Ski and pay for the tune-up service. The same day, Brooks received a certified letter from Velocity stating:

> [A]s of the date of this letter, you still have not picked up your 2007 Honda ARX12T3. Enclosed is a copy of your repair order showing a balance owed of $219.92. We will be charging you a storage fee of $25 per day starting May 28, 2012. Also, if we do not receive payment within the

next 30 days, we will initiate proceedings with the magistrate's office to take possession of that unit.

Brooks refused to pay the invoice or pick up the Ski because it was still not repaired.

On October 15, 2012, Brooks sued Velocity, American Honda Finance Corporation, and American Honda Motor Co., Inc., alleging breach of warranty, violation of the Magnuson-Moss Warranty Act, negligence, Unfair Trade Practices Act violation, constructive fraud, and fraud.

Around February 2013, Honda contacted Velocity explaining it was repossessing the Ski and wanted Velocity to begin a teardown. Velocity began the teardown but never finished. Velocity admitted the Ski would not run in its post-teardown condition. It is undisputed Brooks never authorized Velocity to perform the teardown.

On October 28, 2013, Brooks went to Velocity and found the Ski outside with the motor disassembled and standing water and oil in it. Velocity offered to put the Ski back together and waive the repair fees on the condition Brooks give a full release of all claims. Brooks declined. Further, Velocity would not guarantee the Ski would work. The Ski was not reassembled, and parts remained stripped. Velocity has remained in custody of the Ski since April 9, 2012.

A bench trial was held. All issues as to Defendants American Honda Finance Corporation and American Honda Motor Co., Inc. were resolved. The Master ruled Velocity wrongfully charged Brooks for storage fees and its refusal to release the Ski without payment of the storage fees constituted an unfair trade practice. Judgment was entered against Velocity in the amount of $44,153.34 in favor of Brooks on her Unfair Trade Practices Act (the Act) cause of action. Further, the Master awarded Brooks $6,108.12 in attorney's fees and costs. The Master denied Velocity's Motion for Reconsideration. This appeal followed.

## II. *Unfair Trade Practices Act claim*

"A claim under the [Act] is an action at law." *Jefferies v. Phillips*, 316 S.C. 523, 527, 451 S.E.2d 21, 22 (Ct. App. 1994). "Therefore, this court will correct any error of law, but we must affirm the master's factual findings unless there is no evidence that reasonably supports those findings." *Id*. at 527, 451 S.E.2d at 22–23.

> To recover in an action under the [Act], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s).

*Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006).

A. *Unfair or deceptive act*

Velocity argues Brooks did not prove any unfair trade practice under the Act. Velocity claims Brooks took the Ski to Velocity for repairs and a tune-up, and Velocity charged her for parts and labor associated with the service. Velocity contends there is nothing unfair or deceptive about requiring a customer to pay for services rendered. Brooks argues similar to "bill padding" cases,[1] a business charging fees for impractical services to an inoperable Ski is akin to charging for services never performed. Brooks argues Velocity also engaged in unfair trade practices when it demanded storage fees of $25 per day and refused to release the inoperable Ski unless she executed a full release.

"An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive." *Wogan v. Kunze*, 366 S.C. 583, 606, 623 S.E.2d 107, 120 (Ct. App. 2005) (quoting *deBondt v. Carlton Motorcars, Inc.*, 342 S.C. 254, 269, 536 S.E.2d 399, 407 (Ct. App. 2000)). Oppressive practices include those that are unreasonably burdensome, severe, or tyrannical. *Wingard v. Exxon Co., U.S.A.*, 819 F. Supp. 497, 506 (D.S.C. 1992). Examples of deceptive or unfair practices include mislabeling a product's package, misrepresenting a machine's operating requirements, misrepresenting a used car's history or condition, and padding repair bills.[2]

---

[1] *See generally Jefferies*, 316 S.C. at 523, 451 S.E.2d at 21; *Daisy Outdoor Advertising Co., v. Abbott*, 322 S.C. 489, 473 S.E.2d 47 (1996).

[2] *See generally Haley Nursery Co., v. Forrest*, 298 S.C. 520, 381 S.E.2d 906 (1989); *Potomac Leasing Co. v. Bone*, 294 S.C. 494, 366 S.E.2d 26 (Ct. App. 1988); *Dowd v. Imperial Chrysler-Plymouth*, 298 S.C. 439, 381 S.E.2d 212 (Ct. App. 1989); *Inman v. Ken Hyatt Chrysler Plymouth*, 294 S.C. 240, 363 S.E.2d 691 (1988); *Barnes v. Jones Chevrolet Co.*, 292 S.C. 607, 358 S.E.2d 156 (Ct. App. 1987).

We agree with Velocity that charging Brooks for the tune-up or summerization service did not constitute an unfair trade practice. The parties agreed Velocity would perform an initial tune-up and payment would be required.

However, there is evidence Velocity violated the Act in other ways. Around February 2013, after Brooks filed the lawsuit, Velocity violated its own policy when it began the teardown process of the Ski without Brooks' authorization. Had Brooks retrieved the Ski at that point, it would not have worked. When Brooks returned to Velocity in October of 2013, she found the Ski outside, disassembled, and exposed to the elements. Velocity admits the Ski's exterior had weathered as a result of being "stored" outside for an extended time. Velocity offered to reassemble the Ski and waive the service fees on the condition Brooks give a full release of all claims.

Velocity's adamant pursuit of accumulating repair costs and storage fees for a broken and disassembled Ski constituted an unfair and deceptive act. Velocity knew it could not perform a teardown of a vehicle without the owner's authorization. It became unreasonable for Velocity to seek reimbursement for the initial tune-up service once they began the teardown. Even assuming the Ski was operable after the initial tune-up, those repairs became superfluous when the Ski was left disassembled and unusable after the incomplete teardown. Charging for services subsequently rendered useless equates to charging for services never rendered at all. *See Barnes*, 292 S.C. at 613, 358 S.E.2d at 159 (finding padding bills for auto repair is an unfair trade practice). Furthermore, Velocity's storage of the Ski resulted in additional damage.

B. *Impact on the public interest*

Velocity contends Brooks offered no evidence demonstrating an impact on the public interest. Brooks argues Velocity's insistence upon payment for a "worthless" tune-up and improperly assessed storage charges indicates Velocity is likely to repeat this practice.

"To be actionable under the [Act], an unfair or deceptive act or practice must have an impact upon the public interest." *Wright*, 372 S.C. at 29, 640 S.E.2d at 501. "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004).

> The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in

the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.

*Id*. "These two ways are not the only means for showing the potential for repetition or public impact, and each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the [Act]." *Wright*, 372 S.C. at 30, 640 S.E.2d at 502. "[A]fter alleging and proving facts demonstrating the potential for repetition of the defendant's actions, the plaintiff has proven an adverse effect on the public interest. The plaintiff need not allege or prove anything *further* in relation to the public interest requirement." *Daisy Outdoor Advert. Co.*, 322 S.C. at 493, 473 S.E.2d at 49.

There is evidence supporting the Master's finding that Velocity's conduct and procedures are capable of repetition, and there is a potential for harm to future customers. *See generally Dowd*, 298 S.C. at 443, 381 S.E.2d at 214 (finding defendant automobile dealership's deceptive actions adversely affected the public interest because they had the potential for repetition); *Haley Nursery Co.*, 298 S.C. at 524, 381 S.E.2d at 908–09 (finding the Act's public interest requirement was satisfied because defendant's "breach of warranty impacts on the public interest because of the potential for repetition by publication of these misrepresentations to other consumers").

C. *Ascertainable resulting loss under the Act*

Brooks argues due to Velocity's actions, she lost the value of the Ski and the money she paid to purchase and finance it. Further, she incurred additional expenses in maintaining and repairing the Ski.

Velocity's unfair actions and practices created an ascertainable loss because the Ski is unusable in its current condition and Brooks continued paying the outstanding balance on her loan without being able to use the Ski. *See Wright*, 372 S.C. at 24, 640 S.E.2d at 499 (finding jury could reasonably determine actual damages because plaintiff's truck was worthless due to defendant's concealment of its wrecked condition and damages included loan payments he had made on the truck). Accordingly, we affirm the ruling that Velocity violated the Act.

III. *Velocity's claim for storage costs*

Velocity argues the Master erred by entering judgment in favor of Brooks on Velocity's breach of contract counterclaim because Brooks signed the repair order agreeing Velocity was entitled to storage fees if she failed to timely retrieve her Ski. Velocity further argues the Master erred when it determined, *sua sponte*, that its claims for storage costs were precluded by South Carolina Code Ann. § 56–19–840 (2018), a statute Brooks did not plead.[3] Brooks argues Velocity committed an unfair trade practice and is therefore precluded from seeking storage costs.

We hold the Master did not err in refusing to award Velocity storage costs because Velocity's actions constituted an unfair trade practice and therefore, Velocity was not entitled to storage costs. Because Velocity's actions constituted an unfair trade practice, we need not further address Velocity's additional arguments on this issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding appellate courts need not address remaining issues when disposition of prior issue is dispositive).

## IV. *Treble damages*

Velocity contends the Master erred in awarding treble damages because its alleged conduct did not constitute "willful or knowing" violations of the Act. We disagree. The Act provides for treble damages upon a finding of a willful violation of the Act. S.C. Code Ann. § 39–5–140(a) (1985). The Act defines a willful violation as occurring "when the party committing the violation knew or should have known that his conduct was a violation of [the Act]." S.C. Code Ann. § 39–5–140(d) (1985).

The Master did not err in awarding Brooks treble damages because there was evidence Velocity willfully violated the Act by violating its policy of obtaining owner authorization before performing a teardown. Furthermore, Velocity left the Ski disassembled and continued to seek reimbursement for the initial services rendered to an inoperable Ski. Velocity knew or should have known its conduct violated the Act and was well outside the bounds of reasonable conduct. Accordingly, we affirm as to this issue.

## V. *Attorney's fees*

---

[3] The Master ruled in its Reconsideration Order that Velocity failed to report the Ski as unclaimed to the Department of Motor Vehicles and therefore, forfeited the right to any claims, liens, or costs for storage as provided by § 56–19–840.

Velocity argues the Master's attorney's fee ruling is not supported by sufficient evidence. The Act authorizes a successful plaintiff to recover reasonable attorneys' fees and costs. § 39–5–140(a).

The court considers six factors when determining reasonable attorney's fees: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services." *Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997). "Further, on appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor." *Id*.

The Affidavit of Attorney Fees submitted by Brooks' counsel failed to support each factor, and the record is silent as to several of the other factors. Because the record lacks sufficient evidence, we affirm the award of costs but reverse the Master's award of attorney's fees and remand this issue to the Master to calculate reasonable attorney's fees in accordance with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**[4]

**KONDUROS, HILL, and HEWITT, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.