# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Carolina Real Estate Holdings, LLC, Appellant,

v.

Brilin Electric, LLC and W & L Services, LLC, Defendants,

Of Which Brilin Electric, LLC is the Respondent.

Appellate Case No. 2022-001826

---

Appeal from York County
J. Mark Hayes, II, Circuit Court Judge

---

Opinion No. 6114
Heard May 8, 2025 – Filed July 2, 2025

---

## REVERSED AND REMANDED

---

Brian Scott McCoy, of McCoy Law Firm, LLC, of Rock Hill, for Appellant.

Nathan Adam White, of Law Offices of Nathan A. White PLLC, of Charlotte, for Respondent.

---

**GEATHERS, J.:** Carolina Real Estate Holdings, LLC (CREH) appeals the trial court's denial of its motion for a judgment notwithstanding the verdict (JNOV) on Brilin Electric, LLC's (Brilin) claim under the South Carolina Unfair Trade Practices Act (UTPA).[1] CREH argues that Brilin failed to produce any evidence on the public

---

[1] S.C. Code Ann. §§ 39-5-10 to -890 (2023 & Supp. 2024).

interest and actual damages elements of the UTPA claim. CREH also appeals the trial court's determination that Brilin was the prevailing party for an attorney's fees award pursuant to the lease agreement between the parties. In the alternative, if Brilin is the prevailing party under the lease, CREH asserts the trial court erred in its determination of the amount of attorney's fees awarded because the trial court did not distinguish between attorney's fees for the UTPA claim and the contract claim. We reverse the denial of a JNOV as to the UTPA claim and remand for the trial court to determine attorney's fees.

## FACTS/PROCEDURAL HISTORY

CREH is the owner of a commercial property that consists of multiple commercial/industrial suites. Brilin—a commercial electrician business with over forty employees—and CREH entered into a commercial lease agreement in which Brilin leased a portion of the property that included a warehouse and an office space. The three-year lease commenced on May 1, 2017 and ended on April 30, 2020. The lease provided for attorney's fees in the event of litigation and outlined the parties' responsibilities as to repairs and capital improvements. The lease granted the landlord the right to approve the contractor for repairs undertaken by the tenant and costing more than $3,000.

In the summer of 2019, CREH repaved the parking lot of the property. The parties dispute whether CREH properly notified Brilin that the parking lot would be repaved. The repaving project impacted Brilin's ability to load and unload materials using the side door of its warehouse. To mitigate the impact, Brilin rented an additional forklift to expedite loading and unloading. Brilin unilaterally elected to pay approximately $1,200 less in rent the following month, August 2019, to reimburse itself for the forklift rental. As a result of the failure to pay the entirety of the rent, CREH determined the lease had been violated and sent Brilin an eviction notice.

CREH then discovered "multiple damages" to the property that it alleged Brilin caused, including damages to interior walls, two overhead doors, carpeting inside the office area, walls inside the office area, asphalt outside the building, ductwork in the warehouse, and brickwork in the area above an overhead door. CREH sent a letter on September 24, 2019, to Brilin expressing its concern about these damages. Attached to the letter was an exhibit that CREH described as an estimate of $2,625 to fix the ductwork. The exhibit itself was titled as an invoice and dated May 2, 2018.

The parties met at the property on October 31, 2019, to review the alleged damages and came up with a "punch list" of repairs that needed to be completed by the end of Brilin's lease term. CREH insisted that communications about the repairs be conducted through the parties' counsel.

CREH and Brilin each obtained quotes for the asphalt, overhead door, and brickwork repairs in February and early March 2020. All of CREH's quotes were from its "preferred vendors" and were higher than those obtained by Brilin.[2] CREH, without contribution from Brilin, paid for asphalt repairs. The parties' counsel discussed the overhead door repair quotes, but before consensus was reached and without CREH's approval, Brilin had the doors installed. Brilin paid the installer $4,943 for the work and doors. Additionally, Brilin paid $280 to replace bricks above the overhead door.

On March 27, 2020, CREH commenced the underlying action against Brilin[3] alleging, in relevant part, breach of contract. Brilin filed counterclaims alleging, among other things, an UTPA violation and breach of contract. As to the UTPA violation, Brilin asserted that CREH sought to use its preferred vendors because it could "up[-]charge" and pass the costs along to Brilin. Brilin vacated the premises in early April.

During the four-day trial, the quotes obtained by the parties and the invoices for repairs Brilin undertook were submitted into evidence. CREH also introduced a quote provided by MTB, a preferred vendor of CREH, dated December 28, 2018, for $2,625 to fix the ductwork. Brilin questioned Brad Decker, the owner of CREH, about how the May 2018 invoice to fix the ductwork that was included in the September 2019 letter was for the exact amount of its preferred vendor's quote when the quote came seven months after the date of the invoice. Brilin's theory was that CREH asked its preferred vendors, of which MTB is one, "to fill in the number they're gonna pass along to [the] tenant." Decker testified the May 2018 invoice was based on an initial quote from MTB and the December 2018 quote arose when CREH requested an updated quote. At the time of the trial, Decker stated the

[2] For asphalt repairs, CREH's quote was for $5,595 for three-inch asphalt thickness and Brilin's quote was for $2,900 for two-and-a-half inch asphalt thickness. For the overhead doors, CREH obtained a quote for $7,913.51 to replace the two doors and rent a forklift and scissorlift to assist in the replacement. For the brickwork repairs, CREH's quote was for $1,600.

[3] W & L Services was also listed as a co-defendant. However, W & L Services was dismissed as a co-defendant via consent order before the trial.

ductwork had not been repaired. However, Bryon Russell, the owner of Brilin, testified his employees had already repaired the ductwork.

During its closing argument, Brilin asked for $4,424.75 in damages[4] for its breach of contract counterclaim and $1 for the UTPA claim. The jury found in favor of CREH on its breach of contract claim and awarded CREH $10,513.88 in actual damages. The jury also found in favor of Brilin on its counterclaim for breach of contract and awarded Brilin $4,424.75 in actual damages. Finally, the jury found in favor of Brilin on its counterclaim for violation of the UTPA and awarded Brilin $6,089.13 in actual damages.

The parties each filed post-trial motions seeking an award of attorney's fees pursuant to the lease and submitted affidavits with their motions. Brilin also sought treble damages and attorney's fees pursuant to the UTPA.[5] CREH sought a JNOV on the UTPA claim. At a hearing on the motions, Brilin argued it made a tactical decision to request one dollar in damages on the UTPA claim because the actual damages it suffered consisted of the attorney's fees it owed to its counsel. Brilin argued the jury came to the $6,089.13 damages award because Brilin had to pay counsel to work with CREH's counsel about the repairs and the jury was negating the award to CREH. The court found Brilin was the prevailing party under the lease and the UTPA and awarded Brilin (1) treble damages for the UTPA violation (totaling $18,267.99) and (2) $58,879.55 in attorney's fees and $3,553.05 in costs (totaling $62,432.60). This appeal followed.

## ISSUES ON APPEAL

I. Did the trial court err by denying CREH's motion for a JNOV or remittitur on the UTPA claim because Brilin failed to prove any actual damages or an impact on the public interest?

---

[4] In its closing arguments, Brilin explained it derived the amount of $4,424.75 from the following damages: $1,144.75 for rental of the forklift during the repaving project, $280 for the brick repair, and $3,000 for the security deposit CREH withheld.

[5] "If the court finds that the use or employment of the unfair or deceptive method, act or practice was a willful or knowing violation of [the UTPA], the court shall award three times the actual damages sustained and may provide such other relief as it deems necessary or proper. Upon the finding by the court of a violation of this article, the court shall award to the person bringing such action under this section reasonable attorney's fees and costs." S.C. Code Ann. § 39-5-140(a) (2023).

II.     Did the trial court err by awarding attorney's fees to Brilin instead of CREH because CREH was a prevailing party under the lease?

III.    Did the trial court err in its determination of the amount of attorney's fees it awarded?

## STANDARD OF REVIEW

"When reviewing the trial court's ruling on a motion for a directed verdict or a JNOV, this [c]ourt must apply the same standard as the trial court by viewing the evidence and all reasonable inferences in the light most favorable to the nonmoving party." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331–32, 732 S.E.2d 166, 171 (2012). "The trial court must deny a motion for a directed verdict or JNOV if the evidence yields more than one reasonable inference or its inference is in doubt. Moreover, '[a] motion for JNOV may be granted only if no reasonable jury could have reached the challenged verdict.'" *Id.* at 332, 732 S.E.2d at 171 (alteration in original) (citation omitted) (quoting *Gastineau v. Murphy*, 331 S.C. 565, 568, 503 S.E.2d 712, 713 (1998)). "An appellate court will reverse the trial court's ruling only if no evidence supports the ruling below. In deciding such motions, neither the trial court nor the appellate court has the authority to decide credibility issues or to resolve conflicts in the testimony or the evidence." *Id.* (citation omitted).

"The decision to award or deny attorney['s] fees and costs will not be disturbed on appeal absent an abuse of discretion." *Maybank v. BB&T Corp.*, 416 S.C. 541, 579–80, 787 S.E.2d 498, 518 (2016).

## LAW/ANALYSIS

### I.     JNOV for UTPA Claim

CREH argues Brilin failed to introduce any evidence on two elements—actual damages and public interest—of the UTPA claim. CREH asserts Brilin suffered no actual damages because Brilin did not pay any of the allegedly fraudulent quotes. CREH also asserts Brilin produced no evidence that the higher quotes had any impact on the public interest. We agree.[6]

---

[6] Brilin raises concerns about whether the actual damages argument is preserved. At the directed verdict stage, CREH argued that Brilin did not meet its burden of proof

"To recover in an action under the UTPA, the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected [the] public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Health Promotion Specialists, LLC v. S.C. Bd. of Dentistry*, 403 S.C. 623, 638, 743 S.E.2d 808, 816 (2013) (alteration in original) (quoting *Wright v. Craft*, 372 S.C. 1, 23, 640 S.E.2d 486, 498 (Ct. App. 2006)); *see also* S.C. Code Ann. § 39-5-140 (2023) (allowing an action to recover "actual damages" brought by any person suffering "any ascertainable loss of money or property" resulting from another person's "unfair or deceptive method, act[,] or practice declared unlawful by [S.C. Code Ann. § 39-5-20 (2023)]"). "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the [UTPA]'s embrace . . . ." *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 290 S.C. 475, 479, 351 S.E.2d 347, 349–50 (Ct. App. 1986).

"The UTPA only creates causes of action in those suffering a loss *as a result of* a deceptive act." *Collins Holding Corp. v. Defibaugh*, 373 S.C. 446, 451, 646 S.E.2d 147, 150 (Ct. App. 2007) (emphasis in original). "Recoverable damages include compensation for all injury to plaintiff's property or business which is the natural and probable consequence of defendant's wrong." *Id.* at 451, 646 S.E.2d at 149 (quoting *Global Protection Corp. v. Halbersberg,* 332 S.C. 149, 159, 503 S.E.2d 483, 488 (Ct. App. 1998)). "Actual damages under the UTPA include special or consequential damages that are a natural and proximate result of deceptive conduct." *Wright*, 372 S.C. at 24, 640 S.E.2d at 499 (quoting *Global Prot. Corp.*, 332 S.C. at 159, 503 S.E.2d at 488).

---

as to the public interest element of a UTPA claim. There is no mention of actual damages. However, in its closing argument, CREH argued to the jury that Brilin failed to adduce any evidence of actual damages. In its motion for a JNOV, CREH did argue that the actual damages element was not met. The trial court did not directly address the actual damages argument in its order. Yet, the trial court upheld the jury verdict and trebled the damages. Preservation requires the issue be raised to and ruled upon by the trial court. *See Smith v. Phillips*, 318 S.C. 453, 455, 458 S.E.2d 427, 429 (1995) ("[A]n appellate court cannot address an issue unless it was raised to, and ruled upon by, the trial court."). Here, we find the issue is sufficiently preserved. *See Herron v. Century BMW*, 395 S.C. 461, 470, 719 S.E.2d 640, 644 (2011) ("We are mindful of the need to approach issue preservation rules with a practical eye and not in a rigid, hyper-technical manner.").

"To be actionable under the UTPA, the unfair or deceptive act or practice must have an impact upon the public interest." *Crary v. Djebelli*, 329 S.C. 385, 387, 496 S.E.2d 21, 22–23 (1998). The "adverse effect on the public must be proved by specific facts." *Jefferies v. Phillips*, 316 S.C. 523, 527, 451 S.E.2d 21, 23 (Ct. App. 1994). "An impact on the public interest may be shown if the acts or practices have the potential for repetition." *Singleton v. Stokes Motors, Inc.*, 358 S.C. 369, 379, 595 S.E.2d 461, 466 (2004). "The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts." *Id.* "These two ways are not the only means for showing the potential for repetition or public impact, and each case must be evaluated on its own merits to determine what a plaintiff must show to satisfy the potential for repetition/public impact prong of the UTPA." *Wright*, 372 S.C. at 30, 640 S.E.2d at 502.

Brilin argued that CREH was artificially or fraudulently inflating quotes. The quotes obtained by CREH and Brilin and the invoices paid by Brilin were entered into evidence. However, a difference in quotes alone does not mean there were actual damages. Brilin never paid any of the higher quotes that CREH obtained. Brilin never showed that it sustained any injury to its property or business as a result of the higher quotes. *See Collins Holding Corp.*, 373 S.C. at 451, 646 S.E.2d at 150 ("The UTPA only creates causes of action in those suffering a loss *as a result of* a deceptive act." (emphasis in original)). On appeal, Brilin asserts the jury heard evidence that it "incurred substantial costs when [CREH] forced [Brilin's] counsel into a role of general contractor." Effectively, it argues it suffered damages by having to pay counsel when CREH insisted all communication related to repairs go through the parties' attorneys. The jury saw no evidence of the costs Brilin paid its counsel to act as an intermediary, only that Brilin's counsel communicated with CREH's counsel about the repairs. Brilin concedes that there were repairs that needed to be made on the property. Brilin never offers any evidence that communication going through attorneys was *a loss as a result* of CREH's alleged fraudulently inflated quotes. Thus, there was no evidence of actual damages related to the UTPA claim.

Further, we hold Brilin did not offer any evidence to support the public interest element of a UTPA claim. Brilin, at most, showed that CREH's quotes were higher than the ones Brilin collected. Even if the quotes were artificially inflated or fraudulent, the practice—while lamentable—occurred between the parties in the course of their landlord-tenant relationship. Brilin offered no evidence that CREH engaged in this practice beyond the course of this relationship nor did Brilin offer

any evidence that the higher quotes here adversely affected any member of the public.  In its closing argument, Brilin asserted that the "commercial landlords in this great state [cannot] tak[e] advantage of [their] tenants like this."  However, there are no specific facts that show CREH fraudulently inflated quotes for other tenants in the past or would do so in the future.  *See Jefferies*, 316 S.C. at 529, 451 S.E.2d at 24 ("In the course of human endeavor, every action has some potential for repetition.  The mere proof that the actor is still alive and engaged in the same business is not sufficient to establish this element."); *Turner v. Kellett*, 426 S.C. 42, 49, 824 S.E.2d 466, 469–70 (Ct. App. 2019) (in a UTPA action alleging the defendants padded a customer's auto repair bill, the testimony of one of the defendants that she suspected her employee and a second customer plotted to use the defendants' funds to order parts and install the parts into the second customer's car at the employee's home for cash raised concern that the employee "was engaged in nefarious conduct," but "the alleged scheme . . . sought to defraud the [defendants] rather than their customers.  As such, it does not evidence a history [that] the *same kind* of unfair act—padding auto repair bills—occurred in the past and was likely to continue in the future without deterrence" (emphasis in original)).

Because there was no evidence on the actual damages or public interest elements of the UTPA claim, the trial court erred in denying CREH's motion for a JNOV on this claim.  Accordingly, we reverse and remand to the trial court for entry of a JNOV on the UTPA claim.

## II.    Attorney's Fees

Because we reverse the denial of a JNOV on the UTPA claim and the court did not distinguish between its award of attorney's fees under the lease agreement and its award of attorney's fees under the UTPA, we remand to the trial court to review the issue of attorney's fees.  *See Richland County v. Kaiser*, 351 S.C. 89, 97, 567 S.E.2d 260, 264 (Ct. App. 2002) (reversing the award of attorney's fees because based on this court's reversal of the trial court's findings, the respondents were no longer the prevailing parties).

## CONCLUSION

For the foregoing reasons, we reverse the trial court's denial of a JNOV on the UTPA claim and remand to the trial court for entry of a JNOV on the UTPA claim and reconsideration of the award of attorney's fees.

**REVERSED and REMANDED.**

**WILLIAMS, C.J., and TURNER, J., concur.**